## HOLLENDER *et al. v.* MAGONE, Collector.

*(Circuit Court, S. D. New York. May 9, 1889.)*

CUSTOMS DUTIES—CONSTRUCTION OF ACT—LIQUORS—BEER.

    The term "liquors," in the proviso of the tariff act of March 3, 1883, contained in Schedule H, (T. I. 308*f*,) providing "that there shall be no allowance for breakage, leakage, or damage on wines, liquors, cordials. or distilled spirits," includes fermented as well as distilled liquors, and covers lager-beer.

At Law. Motion for direction of a verdict.

The plaintiffs, the firm of Hollender & Co., of the city of New York, imported by the steamer Gellert, and entered into the port of New York, in September, 1886, 226 casks of lager-beer from Munich, Bavaria, via Hamburg, upon which they claimed a damage allowance to the amount of the entire value, setting forth in their protest that such beer was damaged by souring during the voyage of importation, so as to be totally unfit for use as a beverage, and having no commercial value whatever for any purpose in its damaged condition. The defendant, collector of the port of New York, refused to make any allowance for damage, under Schedule H, (T. I. 308,) which decision of the collector was, on appeal duly taken, affirmed by the secretary of the treasury, (Syn. Treas. Dec. 7808,) and this suit was brought to recover the amount of such damage, the duties upon said importation having been paid in full by the plaintiffs upon the entry thereof. The evidence showed the merchandise to

be lager-beer of ordinary strength, containing about four per cent. of alcohol, and upon its delivery at this port it was sour and unfit for use; and that the term "liquors," as ordinarily used in trade and commerce, did not include lager-beer, but was generally applied to distilled alcoholic beverages. At the close of plaintiffs' evidence, Asst. U. S. Atty. Platt moved for a direction of a verdict for the defendant on the following grounds: The question at issue in this case is whether the term "liquors," used in Schedule H. (T. I. 308*f*,) is broad enough to cover the merchandise in suit. The treasury department, in its letter of October 12, 1886, to the collector of customs at New York, (Synopsis 7808,) held as follows:

"It appears that the damage sustained by the beer in question consists in the deterioration of its quality by souring, and not in the actual loss of any of the contents of the packages originally shipped. As any allowance for damage of the first description on wines, liquors, cordials, or distilled spirits is held in Decision Synopsis 6116, to be prohibited by the tariff act, (T. I., New, 308,) and as beer is covered by the term 'liquors,' (Synopsis, 2308,) the application is necessarily denied."

Synopsis Decision 2308, in considering the construction of the term "liquors," and whether this section should apply to malt liquors in bottles, says:

"The department has arrived at the conclusion, after receiving reports from the collector and appraiser of the ports of New York, Philadelphia, Boston, and from the appraiser at Baltimore, that congress, by inserting the word 'liquors' in addition to the words 'distilled spirits' in such proviso, intended to include malt liquors, which comprise ale, beer, and porter. This result was evident from previous legislation, (see Schedule D of the Revised Statutes,) ale, beer, and porter being classified under the general provision for liquors."

It is quite evident, for the reasons stated by the secretary of the treasury, referring to the language of paragraph 308 of Schedule H, that congress intended the term "liquors" therein used to cover all kinds of liquors, and did not intend to restrict the same to cover distilled liquors only, because, after having used the term "liquors, wines, and cordials," it adds the words "or distilled spirits," thereby showing such intention from the very language of the clause. If congress had intended to have excluded allowance for breakage, leakage, or damage simply to the liquors known as "distilled spirits" or "distilled liquors," it would not have used both of those terms in the same schedule, same paragraph, and same clause of the paragraph.

Under the act of February 8, 1875, § 2, an allowance of 5 per cent. was allowed in lieu of breakage, etc., on wines, liquors, etc., but it was restricted to 5 per cent. When the present law (tariff act of March 3, 1883) was under consideration in the senate of the United States, (see volume 14, Congressional Record, p. 2700,) Senator Beck, of Kentucky, called attention to the proposed change in the law prohibiting any allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, and Senator Morrill said: "It was not proposed to change the duties on liquors or wines; but there is a provision

here that does change them, by providing that no allowance for break-
age, which has hitherto been 5 per cent., shall be granted." So that
the attention of congress was called to the fact that this denial of all al-
lowance for breakage, leakage, or damage on wines, liquors, cordials, or
distilled spirits was in effect raising the duty thereon. Nevertheless,
congress passed this proviso, evidently intending that wines, liquors,
cordials, or distilled spirits of any kind or character within the liquor
schedule of the act of 1883, (which is Schedule H,) should take their
chances of arrival in this country in a sound condition. When liquors
of any kind, distilled or malt, left the shores of Europe, they insured
themselves. In the report of the tariff commission which was appointed
under the act of congress approved May 15, 1882, (vol. 1, p. 24,) re-
porting upon Schedule H, "Liquors," the commission say:

"Including distilled wines and malt liquors, the total value of the product
of the manufactures of this class was in 1880 nearly one hundred and forty-
five millions of dollars. The subjoined exhibits show the growth of the dis-
tilled and malt liquor industry during the last four decades."

Then follows a table showing the same in detail, under the head of
"liquor distilled" and "liquor malt," and the commission proceeds fur-
ther to say:

"The commission has made no proposed changes in duties, excepting that
allowance for breakages be abolished. The schedule has been rearranged, and
some items which properly belong to the liquor schedule have been taken from
sundries and placed therein."

All kinds of liquors are included in Schedule H, whether distilled or
fermented, and no narrow restriction seems to have been made by con-
gress in that schedule as to the use of the term "liquors." Particular du-
ties are therein provided for different kinds of liquors by name, whether
distilled or fermented. The fact that a particular duty is put upon ale,
porter, and beer does not of necessity take them out of the general cate-
gory of liquors. Paragraph 311 of Schedule H uses the terms "brandy
and other spirits, or liquors of any kind," and says that the standard
shall be the same as that which is defined in the laws relating to internal
revenue. In chapter 125 of the Laws of 1879, being an act to amend
the laws relating to internal revenue, section 21 reads as follows:

"That the word 'gallon,' wherever used in the internal revenue law relat-
ing to beer, lager-beer, ale, porter, and other similar fermented liquors, shall
be held and taken to mean a wine gallon, the liquid measure containing 231
cubic inches." 20 U. S. St. at Large, 351.

So that it would appear that in relation to the measurements of gaug-
ing no distinction was made by congress between beer, lager-beer, ale,
porter, and other similar fermented liquors and distilled liquors; and it
will be noticed that congress here denominated lager-beer among liquors
in the language used in the above section. Section 4 of the same act (20
U. S. St. at Large, 333) reads as follows:

"But no special tax shall be held to accrue on a sale of distilled spirits,
wines, or malt liquors, made by a person who is not otherwise a dealer in

liquors, where such spirits, wines, or liquors have been received * * * as security for or in payment of a debt," etc.

Evidently in this section lager-beer would be included under the term "malt liquors," which is only a subdivision of the general term "liquors." Again, in the same section, (same page,) this language is used:

"Every person who sells or offers for sale foreign or domestic distilled spirits, wines, or malt liquors otherwise than as hereinafter provided, in less quantities than five wine gallons at the same time, shall be regarded as a retail dealer in liquors. Wholesale liquor dealers shall each pay $100. Every person who sells or offers for sale foreign or domestic distilled spirits, wines, or malt liquors, otherwise than as hereinafter provided, in quantities of not less than five wine gallons at the same time, shall be regarded as a wholesale liquor dealer."

In Webster's Dictionary the term "liquor" is defined to mean "especially alcoholic or spirituous fluid, either distilled or fermented." In the same dictionary the word "malt" is defined as follows: "Barley or other grain steeped in water till it germinates, and then dried in a kiln; thus evolving the saccharine principle. It is used in brewing. Malt drink, or malt liquor, a liquor prepared for drink by an infusion of malt, as beer, ale, porter," etc. In the same dictionary the word "beer" is defined as "a fermented liquor made from any malted grain, with hops and other bitter flavoring matters." Other dictionary definitions are as follows: Imperial Dictionary: "Liquor: An alcoholic or spirituous fluid, either distilled or fermented." "Beer: An alcoholic liquor." Stormouth's Dictionary: "Liquor: An intoxicating fluid." "Beer: An intoxicating liquor made from barley; a liquor made by fermentation." New English Dictionary: "'Beer' is an alcoholic liquor, and is a term applied to fermented liquors of various kinds." Worcester's Dictionary: "Beer: A fermented liquor made from malt or hops." McCulloch's Commercial Dictionary: "Ale or beer are well known and extensively used fermented liquors." American Cyclopædia: "Beer: A fermented liquor made from malted grain." Encyclopædia Britannica: "Beer: A malt liquor." Encyclopædia Dictionary: "'Beer' is a term now applied to all malt liquors prepared by the process of brewing." De Colange, Dictionary of Commerce & Manufactures: "Beer is a fermented liquor made from malted grain." In the excise laws of the state of New York beer has been construed by the courts to be a liquor. In the case of *Board, etc.,* v. *Taylor,* 21 N. Y. 173, it was held that beer is within the meaning of the term "strong and spirituous liquors," used in the statute to suppress intemperance. The head-note says:

"It seems that any liquor is within the statute, whether fermented or distilled, of which the human stomach can contain enough to produce intoxication."

The language in the statute referred to in that case is as follows:

"Whoever shall sell any strong or spirituous liquors or wines, in quantities less than five gallons at a time, without having a license therefor, granted as herein provided, shall forfeit $50 for each offense."

To the same effect are the following cases: *Board, etc.*, v. *Freeoff*, 17 How. Pr. 442; *People* v. *Crilley*, 20 Barb. 246.    In the case of *Dill-man* v. *People*, decided as far back as 1877, (4 N. Y, Wkly. Dig. 251,) it was held that lager-beer, if proved intoxicating, was within the pro-visions of the statute against strong and spirituous liquors; and in that case the plaintiff, who sold lager-beer, was tried and convicted under the statute against the sale of strong and spirituous liquors, and his con-viction was affirmed by the general term of the New York supreme court, Second judicial department.    In the case of *Briffitt* v. *State*, in the Wisconsin supreme court, (16 N. W. Rep. 39,) it was decided that the court will take judicial notice that beer is a malt and intoxicating drink.    The use of the word itself is *prima facie* proof that it is malt or intoxicating liquor that is meant.    In *People* v. *Wheelock*, 3 Park. Crim. R. 9, it is said in the opinion:

"The word ' beer,' in its ordinary sense, denotes a beverage which is intoxi-cating, and is within the fair meaning of the words ' strong or spirituous liquors,' as used in the statutes."

In *State* v. *Goyette*, 11 R. I. 592, it was held that the court should take judicial cognizance, and without evidence, that lager-beer is a malt liquor, and it is said in the opinion by Chief Justice DURFEE:

"Lager-beer is, and has been for many years, a familiar beverage in this country.   Its constituents are enumerated not only in books of science, but in the popular cyclopædias.   It is a malt liquor of the lighter sort, and differs from ordinary beers or ales, not so much in its ingredients as in its processes of fermentation.   The government might almost as well be required to prove that gin, whisky, or brandy is a strong liquor as to prove that lager-beer is a malt liquor."

In Massachusetts strong beer and lager-beer are deemed to be intoxi-cating by statute.    *Com.* v. *Anthes*, 12 Gray, 29.    Congress must be pre-sumed to have intended to use the term "liquors" in its popular, broad, and comprehensive sense in the statute under consideration, which would include fermented liquors as well as distilled liquors of all kinds.    The treasury department so construed it prior to the passage of the act of 1883, (Synopsis, 2308,) and such construction must have been in the mind of congress at the time of its enactment.

Stephen G. Clarke, Edwin B. Smith, and Charles Curie, for plaintiff.

Stephen A. Walker, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty., for defendant.

LACOMBE, J.    As this case turns upon the construction of the term "liquors" in the proviso of Schedule H, (paragraph 308,) I shall direct a verdict for the defendant.   Verdict accordingly.